Affirmed and Opinion filed July 31, 2003

















Affirmed and
Opinion filed July 31, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00747-CR

____________

 

JAIME ANTONIO JASSO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

__________________________________________

 

On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 886,830

 

__________________________________________

 

O P I N I O
N

            Appellant Jaime Antonio Jasso appeals his aggravated-robbery conviction, arguing:
(1) the evidence is legally insufficient to support his conviction; (2) a
pretrial identification procedure, alleged to have been unduly suggestive,
tainted the complainants’ in-court identification of appellant; and (3)
appellant was entitled to a mistrial because polygraph examination results were
revealed at trial.  We affirm.




 








I.  Factual and Procedural
Background

            The
complainants, Amanda Cardillo and Catherine Walbom, were robbed at knife-point after leaving a
nightclub in the early morning hours. 
After the establishment had closed, Cardillo
and Walbom decided to walk around the block.  As they were walking, a red Nissan Pathfinder
turned onto the street and parked.  Two
young Hispanic males emerged from the vehicle and casually approached the
women.  Holding a knife in his hand, one
of the robbers demanded Cardillo’s purse.  After Cardillo gave
him her purse, she ran about fifty feet away and watched as the same robber,
still holding the knife, demanded Walbom’s
purse.  After Walbom
initially resisted, the robber pulled her purse from her shoulder.  As the robbers[1] fled in
the Pathfinder, Walbom looked at and memorized the
vehicle’s license-plate number.

            Police
traced the license-plate number and discovered the red Pathfinder belonged to
appellant’s mother.  Police set up a
photographic lineup and Cardillo and Walbom separately identified appellant as the robber.  Police then arrested appellant.  Cardillo and Walbom each identified appellant as the robber a second
time at a live lineup and a third time at trial.

            At
trial, Appellant’s brother, Fernando Jasso, claimed
responsibility for the robbery.  The jury
found appellant guilty, and the trial court sentenced him to fifteen years’
confinement in the Texas Department of Criminal Justice, Institutional
Division.

                                                       II.  Issues Presented

            Appellant presents the
following issues for appellate review:

(1)       Is the evidence legally sufficient to support appellant’s
aggravated-robbery conviction?

(2)       Did a pretrial identification procedure, alleged to have been
unduly suggestive, taint the complainants’ in-court identification of
appellant? 

(3)       Was appellant entitled to a mistrial because the results of a
polygraph examination were revealed?

 

                                               III.  Analysis and Discussion

A.        Was the evidence legally
insufficient to support appellant’s conviction?

 

            In his first issue,
appellant argues the evidence is legally insufficient to support his
aggravated-robbery conviction for four reasons: (1) the complainants who
identified appellant as the robber each consumed alcoholic beverages before the
robbery; (2) the accuracy of the complainants’ respective identifications of
appellant from the photographic lineups was compromised because appellant’s
photograph was in position two in both instances; (3) discrepancies existed
between appellant’s physical appearance and the complainants’ description of
the robber’s appearance; and (4) appellant testified he did not commit the
robbery and appellant’s brother claimed responsibility for the robbery.

            In
evaluating a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  We
may not overturn the jury’s verdict unless it is irrational or unsupported by
proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App. 1991). 
The jury, as the trier of fact, “is the sole
judge of the credibility of the witnesses and of the strength of the evidence.”
 Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may choose to believe or disbelieve
any portion of the witnesses’ testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier
of fact resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
Therefore, if any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt, we
must affirm.  McDuff v. State,
939 S.W.2d 607, 614 (Tex. Crim. App. 1997).  The question is not whether a rational jury
could have entertained a reasonable doubt of guilt, but whether it necessarily
would have done so.  Swearingen v. State, 101 S.W.3d 89, 96 (Tex. Crim. App. 2003).

            The
essential elements of the felony offense of aggravated robbery as charged in
the indictment in this case are: (1) a person; (2) in the course of committing
theft; (3) with intent to obtain and maintain control of property; (4)
knowingly and intentionally; (5) threatened or placed another in fear of
imminent bodily injury or death; and (6) then and there used or exhibited a
deadly weapon.  See Tex. Pen. Code §§
29.02(a)(2), 29.03(a)(2); see also
Robinson v. State, 596 S.W.2d 130, 132 (Tex. Crim.
App. 1980).  After thoroughly reviewing
the evidence, we conclude that a rational trier of
fact could have found appellant committed this offense.  Two eyewitnesses, Cardillo
and Walbom, testified that appellant demanded their
purses at knife-point and then absconded with them.  The weaknesses in the evidence to which
appellant points do not render the evidence legally insufficient to support his
conviction.

1.         Did intoxication prevent the witnesses
from accurately remembering and recounting the robbery?

 

            Appellant
first contends the evidence is legally insufficient because Walbom
and Cardillo were probably too intoxicated at the
time of the robbery to remember it.  In
support of this argument, appellant points out that Cardillo
and Walbom each consumed numerous alcoholic beverages
in the six hours preceding the robbery.[2]  

            Cardillo testified she was slightly intoxicated at the time
of the robbery.  Cardillo
further testified, however, that although she still could feel a little bit of
alcohol in her system, it did not affect her ability to observe or recognize
the robber.  Cardillo
could walk in a normal manner and “felt pretty much composed” at the time of
the robbery.  She indicated that her
level of intoxication did not prevent her from accurately remembering and
recounting what happened.

            The
evidence similarly shows that Walbom’s memory of
events was not compromised either.  She
testified that her consumption of alcohol that evening did not affect her
ability to remember the robbery and that she had no difficulty remembering the
license-plate number of the Pathfinder.  Walbom’s testimony was corroborated in that the
license-plate number she provided led police to a red Pathfinder.  

            Furthermore,
Officer David Scales of the Houston Police Department testified that when he
interviewed the complainants, approximately forty-five minutes after the
robbery, neither of them seemed intoxicated and both women demonstrated normal
use of their faculties.  Officer Scales
interviewed the complainants separately; each of them answered his questions
coherently, and their accounts of the robbery were consistent.  Though the evidence shows the complainants had
consumed significant amounts of alcohol in the six-hour period preceding the
robbery, this did not prevent them from remembering and recounting what
transpired and it does not render the evidence legally insufficient to support
appellant’s conviction.

2.         Was the accuracy of the photographic
identification of appellant compromised?

 

            Appellant
also argues the evidence is legally insufficient because his photograph was in
the second position both in the photographic lineup shown to Walbom and in the photographic lineup shown to Cardillo thirteen days later.  Both of the complainants identified appellant
as the robber.  According to appellant,
because the complainants were friends and Walbom
testified she and Cardillo spoke about once a week
after the robbery, Cardillo probably identified
appellant as the robber because of a conversation she had with Walbom after Walbom identified
appellant as the robber.

            Appellant’s
argument assumes Walbom told Cardillo
she had identified the photograph in the second position and that Cardillo knew appellant’s photograph would be in the same
position when she viewed the photographic lineup nearly two weeks later.  The record does not support either of these
assumptions.  Appellant’s argument is
based on pure speculation.  If anything,
the evidence in the record refutes appellant’s theory.  Walbom testified
that after she identified appellant in the photographic lineup, she did not
talk to Cardillo the identification.  Officer Defee, who
conducted the photographic lineup for both complainants, admonished each of
them not to discuss with each other which person, if any, they identified as
the robber.  There is no evidence in the
record that the women failed to comply with the officer’s instructions, that Walbom told Cardillo that she had
identified the photograph in the second position, or that Cardillo
believed the photographs were in the same position in the two lineups.  Appellant’s argument is without merit. 

3.         Do inaccurate age and height estimates
and appellant’s brother’s confession of guilt render the evidence legally
insufficient?  

 

            Appellant
further contends the evidence is legally insufficient because the complainants’
estimates of the robber’s age and height do not match appellant’s age and
height, and because appellant’s brother testified that he (Fernando Jasso) and two of his friends committed the robbery. 

            According
to Officer Scales’s testimony, on the night of the
robbery, Cardillo and Walbom
both estimated the robber was between 5'5'' and 5'6'' tall, and between fifteen
and eighteen years of age.  At trial,
appellant testified that he was not involved in the robbery.[3]
Appellant further testified he is between 5'9'' and 5'10" tall and he was
twenty-four years old at the time of the robbery.  

            After
appellant testified, Fernando Jasso testified that
appellant had no involvement in the robbery. 
According to Fernando, his friends, Albaget
Garza and Samuel Calderon, robbed Walbom and Cardillo while he waited in the Pathfinder.  Fernando testified that Calderon is about
5'5'' or 5'6'' and was seventeen or eighteen years old at the time of
trial.  Fernando also stated that Garza
is about 5'7'' tall and was nineteen or twenty years old at the time of trial.  According to Fernando, Garza and Calderon
both had knives when they jumped out of the Pathfinder to rob Walbom and Cardillo.  Fernando testified that Garza “pulled the
knife” on Cardillo and Walbom,
and Fernando found Garza’s knife in the backseat of the Pathfinder when he
returned to his home after the robbery. 
Fernando testified that he kept the knife in his bedroom and then gave
it to Officer Defee the day before trial.  Fernando also testified that while driving
the Pathfinder, he turned on Converse
 Street from Fargo
 Street
[4] just
before the robbery, and that the robbery occurred on Converse
 Street
. 
On cross-examination, however, Fernando admitted that he could not
provide those details when he gave his first statement to Officer Defee.[5]

            The
State’s evidence contradicted appellant’s and Fernando’s testimony.  Walbom testified
she thought she told the police the robber was about her height, 5'6,'' or
taller, because, when she was standing about a foot away from him, she was
looking up at him to make eye contact. 
Each of the two complainants individually identified appellant as the
robber on three separate occasions, but neither of them identified Fernando,
Garza, or Calderon as one of the robbers. 

            Walbom and Cardillo first
identified appellant in the photographic lineup that Officer Defee made after tracing the license-plate number of the
Pathfinder.  Walbom
positively identified appellant almost immediately and Cardillo
positively identified appellant within about a minute.  After appellant was arrested, he was included
in a live lineup during which he was required to speak while the complainants
viewed him and several “fill-ins” at close range through a one-way mirror.  Cardillo testified
she recognized appellant almost immediately at the live lineup because of his
voice and appearance.  Walbom testified she recognized appellant in the
photographic lineup and the live lineup, because she remembered his ears, small
eyes, and full lips from the night of the robbery.  Finally, at trial, both Walbom
and Cardillo identified appellant as the robber in
open court.

            Officer
Defee did not include photographs of Fernando, Garza,
and Calderon in the original photographic lineup because Fernando only came
forward with his account of the robbery ten or eleven days after appellant’s
arrest.  At that point in the
investigation, the police still were trying to identify the robber who did not
have a knife, so after Fernando claimed responsibility for the robbery, Officer
Defee showed the complainants a second photographic
lineup which included photographs of Fernando, Garza, and Calderon.  Walbom and Cardillo viewed this photographic lineup separately, on the
same afternoon, but neither of them identified any of the persons pictured as
being involved in the robbery. 

            In
addition to the complainants’ identification testimony, circumstantial evidence
admitted at trial also pointed to appellant. 
Walbom testified her car keys were in her
purse when the robber took it.  At that
time, Walbom’s key chain had four keys, a hook, an Addidas tag, a bottle opener, and a grocery-store courtesy
card tag containing a scanner code.  Walbom did not see her keys again until several months
after the robbery when she received them in the mail from the grocery
store.  The store was able to identify Walbom as the owner of the keys and mail them to her because
the store’s courtesy tag was still on her key chain.[6]  When the keys were returned, there were three
additional keys on the chain, including a car key.  Based on the length, symbol, and number of
cuts on the key, a parts manager from a Lincoln-Mercury dealership testified
the key fit a Lincoln or Mercury that was made between 1981 and 1992.  The parts manager testified the keys could
fit a 1991 Lincoln Towncar.  Appellant and appellant’s mother both
testified that appellant rarely drove the red Pathfinder because he drove a
1991 Lincoln Towncar that nobody else drove.[7]

            It
was the jury’s duty to resolve conflicting evidence in this case.  See
Anderson v. State, 701 S.W.2d 868, 872–73 (Tex. Crim.
App. 1985); see also Heiselbetz
v. State, 906 S.W.2d 500, 504 (Tex. Crim. App.
1995) (“Reconciliation of conflicts in the evidence is within the exclusive
province of the jury.”).  The jury had
before it all of the relevant information concerning the identification of
appellant, and, as fact finder, the jury had the duty to determine the
credibility of the witnesses’ testimony and to decide the weight to be given
the evidence.  See Garza v. State, 633 S.W.2d 508, 514 (Tex. Crim.
App. 1981) (opin. on reh’g);
see also Carr v. State, 694 S.W.2d
123, 128 (Tex. App.—Houston [14th Dist.] 1985, pet. ref’d).  Whether considered alone or in conjunction
with appellant’s other arguments for legal insufficiency, neither the
complainants’ inaccurate estimates of the robber’s age and height nor
Fernando’s testimony made it impossible for a rational trier
of fact to find the essential elements of aggravated robbery beyond a
reasonable doubt.  See McDuff, 939 S.W.2d at 614; Davis v. State, 831 S.W.2d 839,
842 (Tex. App.—Dallas 1992, pet. ref’d).  The evidence is therefore legally sufficient
to sustain appellant’s aggravated-robbery conviction.  We overrule appellant’s first issue.

B.        Did a pretrial procedure, alleged to
have been unduly suggestive, taint the complainants’ in-court identification of
appellant?

 

            In his second issue,
appellant maintains the photographic lineup viewed by the complainants was
unduly suggestive for three reasons: (1) the photograph of appellant used in
the lineup was four years old; (2) appellant’s photograph was in the second
position in both the lineup shown to Walbom and in
the lineup shown to Cardillo, so it is likely Walbom told Cardillo to pick
appellant’s photograph; and (3) the witnesses were too intoxicated at the time
of the robbery to later make an accurate identification.

            Appellant
has not preserved error on his second issue. 
At trial, appellant did not argue that the age of the photograph
rendered the pretrial-lineup procedure unduly suggestive.  His trial objection was simply that the
photograph was too old.  Because
appellant’s complaint on appeal does not comport with his trial objection, he
has failed to preserve error on this complaint. 
See Guevara v. State, 97
S.W.3d 579, 583 (Tex. Crim. App. 2003).  

            Appellant
also waived his second and third arguments because he did not raise these
objections at trial.  See Tex.
R. App. P. 33.1(a)(1) (requiring party to make a specific, timely
objection to the trial court to preserve error for appellate review).  After the trial court overruled appellant’s
objection to the age of the photograph, the trial court asked defense counsel
whether he had any further objection to admission of the photographic lineup
evidence.  Defense counsel stated he had
no further objection, and thus he failed to preserve error.  See
Canales v. State, 98 S.W.3d 690, 699 (Tex. Crim.
App. 2003) (finding failure to preserve error when defense counsel did not
register further objection after trial court instructed him to do so if
necessary).  Accordingly, we overrule
appellant’s second issue.

C.        Was appellant entitled to a mistrial
because the results of a polygraph test were revealed?

 

            In
his third issue, appellant argues the trial court erred when it overruled his
motion for mistrial.  Appellant moved for
a mistrial after Officer Defee testified on redirect
examination that his doubts that the robbery occurred were quelled when Walbom submitted to an interview and a polygraph
examination.  The following exchange
occurred at trial: 

Prosecutor:   Also defense counsel asked you whether you had doubts whether the
offense occurred.  In fact, you said you
had doubts as to whether or not this offense occurred.  Do you recall that question?  

            Officer Defee: Yes, ma’am, [sic] I do.

            Prosecutor: And
could you tell this jury if in fact you overcame those doubts?

Officer Defee:
Yes, ma’am,
[sic] I did overcome those doubts by means of interview and a lie detector test
that was administered there at the headquarters building at HPD central.

            Prosecutor: And who [sic] did you administer this polygraph test to?

            Officer Defee: To the victim Ms. Walbom.

            Defense Counsel:
Objection, Your Honor.

            The Court: Sustained.

Defense Counsel: Your Honor, at this time we
object, that the jury disregard the last question, last answer.

Prosecutor:   Your Honor, defense opened that line of
questioning.  He had the report right
before me.

            The Court: That’s
overruled.  The jury will disregard the
last answer.

            Defense Counsel: Move
for a mistrial.

            The Court:
Overruled.

 

            Because
of their inherent unreliability and tendency to be unduly persuasive, the
existence and results of polygraph examinations are inadmissible for any
purpose in a criminal proceeding on
proper objection.  Tennard v. State, 802 S.W.2d 678, 683 (Tex. Crim.
App. 1990); Gregory v. State, 56
S.W.3d 154, 173 (Tex. App.—Houston [14th
Dist.] 2001, pet. dism’d).  However, the mere mention of a polygraph
examination does not automatically constitute reversible error even if the
results of the exam are revealed.  See Tennard,
802 S.W.2d at 684.

            To
preserve a complaint for appellate review, a party must make a timely request,
objection, or motion with sufficient specificity to apprise the trial court of
the complaint.  Tex. R. App. P. 33.1(a); Saldaño v. State, 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002).  To
timely object, a party must object to the evidence, if possible, before it is
actually admitted.  Ethington v. State, 819 S.W.2d
854, 858–59 (Tex. Crim. App. 1991).  If it is not possible to object before the
evidence is admitted, then the party must object as soon as the objectionable
nature of the evidence becomes apparent and must move to strike the
objectionable evidence that already has been admitted.  Id. 

            The
standard set by our high court for the timely assertion of objections is both
demanding and unforgiving.  See Lagrone v.
State, 942 S.W.2d 602, 617–18 (Tex. Crim. App.
1997) (finding objection untimely when appellant’s counsel objected after
prosecutor had spoken only four words following the testimony in
question).  Applying this standard to the
testimony and objection now before us, we must conclude that appellant failed
to preserve error because he did not make a timely objection.  See
Tex. R. App. P. 33.1; Lagrone, 942 S.W.2d at 617–18; Ethington, 819 S.W.2d at 858–59.  Because polygraph examination results are
inadmissible for any purpose, the objectionable nature of Officer Defee’s testimony was apparent as soon as he said he used a
polygraph exam to overcome his doubts in this case.  And because defense counsel did not object as
soon as Officer Defee mentioned the polygraph examination,
but instead waited to object until after another question was asked and
answered, appellant failed to preserve any error.  See
Willis v. State, 785 S.W.2d 378 , 385 (Tex. Crim.
App. 1985) (holding any error in mention of polygraph exam waived when defense
counsel did not object until the conclusion of witness’s testimony).  Accordingly, we overrule appellant’s third
issue.  

            Even
if appellant’s objection were considered timely, the error in the admission of
the polygraph examination evidence was harmless beyond a reasonable doubt.  See Tennard, 802 S.W.2d at 684.  When a polygraph exam is mentioned at trial
and defense counsel requests a mistrial, the reviewing court must first
determine whether the examination results were revealed to the jury.  Id.  Generally, when polygraph examination results
are mentioned, but results are not revealed, an instruction to disregard is
sufficient to cure any error.  See id. 
However, when results are revealed to the jury, an instruction to
disregard alone is insufficient and the reviewing court must conduct a harm
analysis to determine whether the error merits reversal of the trial court’s
judgment.  See id.; see also Buckley v.
State, 46 S.W.3d 333, 336–37 (Tex. App.—Texarkana 2001, pet. dism’d).  In
determining whether the trial court erroneously failed to grant a mistrial, the
reviewing court may also consider (1) whether the questioning party exhibited
bad faith by asking a question designed to elicit polygraph evidence; and (2)
whether polygraph evidence bolstered the State’s case.  See
Buckley, 46 S.W.3d at 336–37; see
also Sparks v. State, 820 S.W.2d 924, 927–28 (Tex.
App.—Austin 1991, no pet.) (summarizing Court of Criminal Appeals polygraph
decisions). 

            Officer
Defee’s polygraph testimony implicitly conveyed to
the jury that one of the complainants, Walbom, passed
a polygraph examination — Officer Defee testified the
results of the examination overcame his concerns that the robbery did not
really occur.  See Nichols v. State,  378
S.W.2d 335, 337 (Tex. Crim. App. 1964) (finding
polygraph results indirectly communicated to jury by State’s merely asking
testifying complainant in rape case whether she had taken a polygraph
exam).  As Walbom
was also a witness for the State, the polygraph evidence undoubtedly enhanced
her credibility.  See Tennard, 802 S.W.2d at 684 (finding
officer’s statement that another prosecution witness passed polygraph exam
bolstered other witnesses’ testimony). 
Moreover, the State’s questioning was designed to elicit evidence regarding
the polygraph exam and, as such, exhibited bad faith.  Although Officer Defee
first mentioned the polygraph examination in a nonresponsive
answer to whether he overcame his doubts (not how he overcame his doubts) in the case, the State proceeded by
asking to whom Officer Defee administered the
test.  Compare Tennard,
802 S.W.2d at 684 (finding officer’s answer that he believed suspect because of
polygraph results nonresponsive because question was whether he believed suspect), with Nichols, 378 S.W.2d at 336 (finding state intentionally elicited
polygraph evidence by improperly asking witness whether she took a polygraph
exam).  Accordingly, the trial court’s
instruction to disregard would be deemed insufficient to cure error, and, had
appellant preserved error, this court would next consider whether the error was
harmless.  See Tennard, 802 S.W.2d at 684.

 

 class=Section3>

            In
conducting a harm analysis in Tennard, the Texas Court of Criminal Appeals found beyond a
reasonable doubt that the erroneous admission of polygraph examination results
did not contribute to the verdict or punishment, because the polygraph
examination was not administered to the State’s sole witness “nor even a
crucial witness,” other evidence corroborated the testimony of the witness
whose testimony the polygraph evidence bolstered, and the officer who testified
about polygraph examination results did so to show his own reasons for
believing the witness.[8]  802 S.W.2d at 684.  As in Tennard, Walbom was not the State’s sole witness, though she was a
more crucial witness than the witness at issue in Tennard.  Moreover, Cardillo,
the other complainant, provided corroborating testimony that identified
appellant as the robber.  The red
Pathfinder and the Lincoln Towncar car key on Walbom’s returned key chain also provided circumstantial
evidence of appellant’s guilt.  Also, as
in Tennard,
Officer Defee testified about Walbom’s
polygraph examination to show his own reasons for believing the robbery in this
case occurred.  Officer Defee did not reveal the polygraph results to bolster Walbom’s identification testimony that went to the main
issue at trial—whether appellant committed the robbery.  Given this evidence, even if appellant had
preserved error on the State’s introduction of polygraph examination results by
making a timely, specific objection, any error in denying a mistrial would be
harmless.   

                                                             IV.  Conclusion

            The
evidence is legally sufficient to sustain appellant’s aggravated-robbery
conviction.  Appellant failed to preserve
error regarding his complaint that a pretrial identification procedure, alleged
to have been unduly suggestive, tainted the complainants’ in-court
identification of appellant.  He also
failed to preserve error on his complaint about the admission of polygraph
examination testimony; and, even absent waiver, the error would be harmless.

            Having overruled all of appellant’s
issues, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Kem Thompson
Frost

                                                                                    Justice

 

Judgment
rendered and Opinion filed July 31,
 2003.

Panel
consists of Justices Yates, Hudson, and Frost.

Publish — Tex. R. App. P. 47.2(b).

 











            [1]  Walbom and Cardillo testified that, as far as they could see, the
second robber did not have a weapon.  He
stood just behind the man with the knife and held Cardillo’s
purse while his companion demanded Walbom’s
purse.  Unless otherwise specified, all
subsequent references to “the robber” in this opinion are to the knife-wielding
robber.





            [2]  The robbery took place at about 2:30 a.m. 
According to Cardillo’s testimony, on the night
of the robbery she consumed one pear cider before 9:00 p.m. and a whisky sour between 9:00 p.m. and 11:00 p.m.  Between 11:00 p.m. and 1:45 a.m., Cardillo
drank two “woo-woos” and three whisky sours. 
According to Walbom’s testimony, Walbom drank one beer before 9:00 p.m., one sip of Cardillo’s whisky sour between  9:00 p.m. and 11:00 p.m., and two “woo-woos”
between 11:00 p.m. and 1:45 a.m..  Walbom testified that a “woo-woo” is a shot that contains
“vodka, peach and cranberry.”    





            [3]  Appellant’s prior arrests and jail sentences
for unauthorized use of a motor vehicle and evading arrest were admitted into
evidence as a result of his decision to testify.





            [4]  At trial, when asked the name of the street
he was driving on before he turned on Converse
 Street he answered, “I don’t recall.  I think it was Drew.”  When asked the same question a second time,
Fernando testified he was driving on Fargo
 Street before he turned on Converse.   





            [5]  Fernando’s prior conviction for burglary of a
motor vehicle was admitted into evidence on cross-examination as a result of
his decision to testify.





            [6]  The grocery store also sent Walbom a letter explaining it had no way of knowing where
the keys were found or who returned the keys because they were returned to the
store’s regional office without any other information.





            [7]  Appellant’s Towncar
was repossessed by a creditor after he was arrested.  Officer Defee
testified his attempts to locate appellant’s repossessed Towncar
to test the key were unsuccessful.





            [8]   Although Tennard is factually
distinguishable from the present case because the polygraph examination results
in that case were only admitted when the testifying officer gave a nonresponsive answer, this difference does not bear on the
present harm analysis because the Tennard court only considered the responsiveness of the
officer’s answer in determining whether defense counsel invited the polygraph
testimony, and not in its harm analysis. 
See Tennard,
802 S.W.2d at 684.